IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEIGHTON D. LINDSEY,

                              OPINION AND ORDER

                Plaintiff,

                              14-cv-27-bbc

    v.

MICHAEL COCKROFT,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil case involves an alleged incident at the Wisconsin Security Program Facility, at a time when plaintiff Leighton D. Lindsey was imprisoned there and defendant Michael Crockroft was employed as a guard. Plaintiff contends that when defendant came to plaintiff's cell after dinner to pick up an empty food container, he intentionally slammed the door of the trap containing the carton so as to injure plaintiff's right index finger. Defendant denies that he took any act with the intent to injure plaintiff's finger.

      The case is before the court on defendant's motion for summary judgment, dkt. #59, on plaintiff's two motions for preliminary injunctions, dkts. ##54 and 66, and a question about keeping a motion for discovery under seal, dkt. #67. (The motion for the discovery itself was denied earlier. Dkt. #75.) In addition, defendant has asked the court to enter a strike against plaintiff on the ground that his suit is malicious.

      Defendant bases his motion for summary judgment on two videotapes that he

1

believes support his position that he took no action intended to injure plaintiff. Ordinarily, physical evidence such as a videotape bearing on a disputed factual issue would be reserved for trial. In this case, however, defendant has explained the circumstances leading to the downloading of the security videos showing the alleged incident that took place about 5:20 pm. Scott v. Harris, 550 U.S. 372, 380 (2009) ("There are no allegations or indications that this videotape [recording of a high speed chase] was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.") Plaintiff has had an opportunity to review the videos, dkt. #45, and did not file any objections to the court's reliance on the tapes for this purpose or contest either their accuracy or their relevance. He did argue that the video should have included the time period when defendant delivered the dinner rather than just the period when he picked up the remains of the dinner because, he says, he and defendant got into an argument at that time. Even if I accept his allegation that an argument occurred, it does not affect the conclusiveness of the videotaped recordings.

The tapes show that plaintiff did not have his finger in or near the trap when defendant was trying to close it and could not have been injured in the manner that he alleges. No reasonable jury viewing this evidence could find that when defendant closed the trap, he took any action intended to injure plaintiff. Accordingly, summary judgment will be entered for defendant.

Plaintiff's two motions for injunctive relief will be denied because they do not relate to this suit. The motion that plaintiff filed under seal to obtain documents from a state investigation will be unsealed because he never responded to this court's order to show cause

2

why the motion should be kept under seal. The order on that motion will also be unsealed. In addition, now that the motion itself has been denied, the issue is probably moot.

### A. Plaintiff's Motions for Preliminary Injunctive Relief

Before taking up defendant's motion for summary judgment and for a strike, I will address plaintiff's motions for preliminary injunctive relief or a temporary restraining order. In his first motion, plaintiff alleges that employees at the Green Bay Correctional Institution, where he is now housed, have interfered with his ability to pursue his lawsuit by denying his request for carbon paper and not allowing him to have all his legal documents in his cell at the same time. He alleges that business office worker T. Debruin will not give him carbon paper for making copies even though plaintiff needs to copy his legal materials and that his outgoing mail is slow to be delivered to the post office. Plaintiff also alleges that property officer Schiller will not allow him to have all his legal documents in his cell at the same time and that Schiller refuses to sort through the documents so that plaintiff can exchange his documents for new ones. He asks the court to order business office worker T. Debruin to give plaintiff carbon paper and deliver mail more promptly and to order and property officer Schiller to give plaintiff all his legal materials.

In his second motion, plaintiff alleges that Debra Keiler and Timothy Watermolen, correctional officers at the Green Bay Correctional Institution, threw "milky urine" at him, with the result that some of his legal documents were soaked in the substance. He also says that Watermolen told plaintiff he had been authorized to hurt plaintiff and threatened to

3

steal plaintiff's legal materials. Plaintiff asks the court to order Keiler and Watermolen not to touch his legal papers, not to dump his food and not to assault him and not enter his cell in his absence and without a supervisor. He also asks that Watermolen be ordered not to touch him or escort him and that all prison staff be ordered not to remove paperwork from his cell without filling out a form explaining their reason for doing so and allowing him to see the form.

Both of plaintiff's motions have the same problem: plaintiff cannot obtain injunctive relief on issues that do not relate to the claims on which he has been allowed leave to proceed. United States v. Kirschenbaum, 156 F.3d 784, 794 (7th Cir. 1998) ("A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party."). Plaintiff says the people he mentions are acting in concert with defendant, but he cites no evidence for believing this to be the case. If plaintiff believes the prison staff members are violating his constitutional rights, he will have to raise these claims in a separate lawsuit after he first exhausts his administrative remedies. As I have explained to plaintiff previously in this lawsuit, the court recognizes an exception to this policy only if it appears that the alleged actions would directly, physically impair the plaintiff's ability to prosecute this lawsuit. Plaintiff has not met this standard.

With respect to plaintiff's assertion that guards will not let him keep his legal materials in his cell, the Department of Corrections says that plaintiff does have access to all his legal materials: he is permitted to have two large brown bags of legal materials in his

cell at any one time and he may exchange them when he requires other documents. It acknowledges that it denied plaintiff access to his legal materials earlier in the mistaken belief that he did not have an active case, but it has corrected that error and has allowed him access to those materials. It also says that plaintiff's mail is delivered to the post office within one to two business days and plaintiff points to no deadlines he missed as a result of late mailing.

Even if defendant or his employer, the Department of Corrections, did restrict plaintiff's access to his legal materials or delay the mailing of his legal mail, plaintiff has not shown that his ability to prosecute his case has been affected. He complains of the department's refusal to provide him carbon paper, but the department is not required to provide carbon paper to inmates. Carbon paper might be a timesaver, but it is not essential to the prosecution of a case. Plaintiff has not shown that prison staff's actions have actually impaired his ability to pursue this lawsuit, so he cannot receive injunctive relief on these matters in this case and his motions will be denied.

B. Motion for Summary Judgment

From the parties' proposed findings of fact and the two videotapes submitted by defendant, showing the relevant events of March 2, 2013, I find that the following facts are undisputed.

UNDISPUTED FACTS

5

Plaintiff Leighton D. Lindsey was a prisoner at the Wisconsin Secure Program Facility in Boscobel, Wisconsin in February and March 2013. Defendant Michael Cockroft was a correctional officer at the Wisconsin Secure Program Facility at the same time.

On February 28, 2013, plaintiff was placed on a "back of cell" precaution, which means, among other things, that correctional officers used a two-way box or "trap," fixed to plaintiff's cell door to pass items to and from him. The trap has an open front and a sliding back door that may be opened and closed from outside the cell only, so that staff members do not have any direct contact with plaintiff.

On March 2, 2013, defendant passed plaintiff's dinner to him using the trap. Videotapes taken from two locations, one inside plaintiff's cell, showing the cell door with the trap on the center left of the film, and one in the hallway outside plaintiff's cell, showing the door and the trap in the center of the film. In the video taken from the first position, plaintiff is shown moving about the front of his cell. After a while, he picks up his dinner carton and moves it toward then door. He then stands with his back to the camera on the left side of the door, with his upper arms extending downward toward the floor. At approximately 17:20:48-55, plaintiff leans back and looks down, then swings his right shoulder forward and pulls it back quickly. By 17:20:57, he can be seen holding his right finger toward his cell door.

In the second video, taken from a hallway camera, defendant is seen entering the area, retrieving the dinner residue from the prisoner across the hall and placing it in the trash bin before moving to plaintiff's cell. At approximately 17:20:30, plaintiff places his dinner

6

carton in the trap. Once the dinner carton is in the trap, defendant attempts to close the trap's sliding back door, struggling to do so. His back is to the camera. Another officer stands facing defendant and the camera. As defendant struggles with the trap's door, plaintiff's left shoulder and profile are visible from inside his cell. Plaintiff does not appear to be in distress. At approximately 17:20:43, approximately twelve seconds after defendant began trying to close the back door of the trap, plaintiff moves his right hand quickly up and forward, toward the trap. He then moves it back quickly, before holding his finger toward defendant. Defendant pulls on the door of the trap in an apparent effort to be sure it is closed securely and he and the other officer walk away.

The in-cell video shows defendant's right arm moving quickly at approximately the same time as shown in the second video. After that, it shows plaintiff holding his right hand with his left hand and bending over as if in pain.

Photographs of plaintiff's finger taken after the incident show that the finger is discolored under his fingernail.

OPINION

Under the Eighth Amendment, correctional officers may not engage in "cruel and unusual punishments," which include excessive force. Force is excessive if it "inflict[s] unnecessary and wanton pain." Whitley v. Albers, 475 U.S. 312, 320 (1986). The critical question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21 (quoting

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In this case, plaintiff says that defendant intentionally closed plaintiff's finger in the sliding back door on the trap.  According to plaintiff, he put his hand in the box and refused to move it when defendant came to hand out the dinners on March 2, 2013.  Plaintiff alleges that, in response, defendant told him to remove his hand or he would "chop it off" when he came to pick up the meal.   He alleges also that when defendant came back, plaintiff put his finger in the two-way box, after which defendant removed the dinner leftovers and shut the sliding door on plaintiff's finger.  Plaintiff says he knows defendant was acting with the intent to harm him because defendant said that he was doing so to retaliate for plaintiff's act of throwing urine on another correctional officer.

The video contradicts plaintiff's version of events, showing that plaintiff did not move his right hand and finger toward the trap's door until after defendant had began his struggle to close the jammed sliding door.  This means plaintiff's finger could not have been resting in the trap where defendant could see it. If plaintiff's finger was caught in the closing door, it is because plaintiff put it there, not because defendant was trying to harm him.  Plaintiff says that because his back was facing the camera, it is impossible to tell from the video where his hand was located at the crucial times, but putting together the images in the two videos and observing plaintiff's movement of his hand forward and upward toward the box, it is obvious that his hand could not have been resting in the box when defendant began trying to close it.

In light of the video evidence, no reasonable jury could accept plaintiff's version of

events, so I need not consider the facts in the light most favorable to plaintiff. Rather, I may adopt the facts as shown in the video. Scott, 550 U.S. at 378-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment . . . . [I]t should . . . view[] the facts in the light depicted by the videotape.").

In excessive force cases, "[a]n express intent to inflict unnecessary pain is not required," Whitley, 475 U.S. at 328, but "the subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment." Graham v. Connor, 490 U.S. 386, 398 (1989). Therefore, the question is whether the video evidence leaves any room to argue that defendant acted with intent to harm plaintiff. I conclude that it does not.

The facts of this case are similar to those in Outlaw v. Newkirk, 259 F.3d 833, 839 (7th Cir. 2001), in which a correctional officer relayed clothing to a prisoner through a two-way box like the one in this case; the prisoner moved his hand into the box while holding garbage and expressing hostilities; and the officer closed the door on the prisoner's hand. The Court of Appeals for the Seventh Circuit concluded that "a rational jury could draw one of only two possible conclusions: that the incident was an accident, or that [defendant] deliberately and perhaps unnecessarily applied a relatively minor amount of force to achieve a legitimate security objective. Neither scenario would involve a use of force that was 'repugnant to the conscience of mankind.'" Id. In this case, the video shows at most that

9

plaintiff put his hand in the way of a closing door and did so only after defendant had begun trying to shut it.  Thus, the video forecloses any argument that defendant deliberately closed the door on plaintiff's finger.  It follows that defendant lacked the mental state necessary to violate the Eighth Amendment.

The video evidence also means that plaintiff's allegations with respect to defendant's comments do not raise a genuine dispute of material fact.  Even if defendant made these comments, they would not change the facts that plaintiff caused his own injury and that defendant's act of closing the sliding door was not carried out with intent to harm plaintiff. Accordingly, summary judgment will be entered in defendant's favor.

One final issue remains to be resolved.  Defendant has asked the court to issue a strike against plaintiff under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), on the ground that his lawsuit is malicious.

Issuing strikes at this stage of the proceedings is rare.  Defendant has not offered any evidence to support his request to find that plaintiff filed the lawsuit maliciously, except to repeat his argument that the video shows that some of plaintiff's allegations are false. Although the question is a close one, I decline to issue a strike.  It is possible that plaintiff is lying, but it is also possible that his memory is flawed.  Without additional evidence, I cannot conclude that plaintiff has acted with "inten[t] to harass," as is necessary for concluding that his lawsuit is "malicious" under § 1915A or § 1915(g).  <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109 (7th Cir. 2003); <u>see also</u> <u>Paul v. Marberry</u>, 658 F.3d 702, 705 (7th Cir. 2011) (citing <u>Lindell</u> approvingly).  Accordingly, defendant's motion will be denied.

ORDER

IT IS ORDERED that

1. Plaintiff Leighton D. Lindsey's motions for preliminary injunctive relief, dkts. ## 54 and 66, are DENIED.

2. Defendant Michael Cockroft's motion for summary judgment, dkt. #66, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

3. Defendant's motion for the issuance of a strike against plaintiff under 28 U.S.C. § 1915(g), dkt. #66, is DENIED.

4. The clerk of court is directed to UNSEAL docket # 67 and docket #75.

Entered this 10th day of February, 2015.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge